UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MIOSOTYS LOPEZ-DELGADO,              :     13 Civ. 5727 (JCF)
                                    :
            Plaintiff,              :     MEMORANDUM
                                    :     AND   ORDER
      - against -                   :
                                    :
COMMISSIONER OF SOCIAL SECURITY,    :
                                    :
            Defendant.              :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

    The plaintiff, Miosotys Lopez-Delgado, brings this action

pursuant to section 405(g) of the Social Security Act (the "Act"),

42 U.S.C. § 405(g), seeking review of a determination of the

Commissioner of Social Security (the "Commissioner") finding that

she is not entitled to disability insurance benefits.  The parties

have submitted cross-motions for judgment on the pleadings pursuant

to Rule 12(c) of the Federal Rules of Civil Procedure. For the

reasons set forth below, the Commissioner's decision is vacated and

the case is remanded to the Social Security Administration (the

"SSA") for further proceedings consistent with this opinion.[1]

---

    [1] The parties have consented to my jurisdiction for all
purposes pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal
Rules of Civil Procedure.

Background

    A.   Personal History

    Ms. Lopez-Delgado was born on June 30, 1974. (R. at 37).[2] She lives at home with her mother and her four children, ages 2 to 18. (R. at 37). The plaintiff last worked in 2009 as a babysitter, watching one child in her own home. (R. at 41, 133-34). She also testified that she worked for a few years as a receptionist, sometime around 2000, answering phones and making copies (R. at 42-43), although this job is not listed on her disability report (R. at 132). There is conflicting evidence as to what level of schooling the plaintiff has attained, but it is clear that she has a limited education.[3]

    According to her testimony, the plaintiff leaves her home only for the purposes of therapy, grocery shopping, and sometimes attending church. (R. at 47, 143-44). At home, she is sometimes able to cook, clean, and help her mother take care of her children,

---

    [2] "R." refers to the Administrative Record.

    [3] The plaintiff testified to finishing sixth grade at age 13 or 14 after being held back four or five times and receiving special education (R. 37, 49-50, 55), but her disability report asserts that she finished the eighth grade (R. 132). She further asserted at different times during treatment that she had achieved the ninth grade (R. at 205) and, alternatively, had completed "some college" (R. at 210), but she denied making these statements during her SSA hearing (R. at 38, 48). There is also conflicting testimony about how well Ms. Lopez-Delgado can read or write. (R. at 40, 50, 146).

but usually just stays in her room on account of depression and the effects of her medications.  (R. at 46-49, 55, 140-42).  At the hearing, she denied doing anything at all other than sleeping.  (R. at 46, 54-55).  The plaintiff reports having no hobbies  (R. at 144, 212) and no friends (R. at 47, 214) other than one good friend that she sees at times  (R. at 250).

   B.   Medical History Prior to Disability Application

   The plaintiff alleges a disability onset date of December 31, 2009, due to depression, insomnia, and panic attacks.  (R. at  128-32).  She first sought a psychiatric evaluation from Montefiore Medical Center ("Montefiore") on October 2, 2009, complaining of anxiety and depression.  (R. at 265, 269).  She did not follow up on her initial assessment, but returned to Montefiore almost a year later, on August 2, 2010, with similar complaints of depression.  (R. 208-11).  In her initial intake with social worker Maria Casillas, the plaintiff listed symptoms including depressed mood, decreased energy, appetite disturbance, hopelessness, impaired concentration, decreased motivation, memory impairment, irritability, and mild anxiety.  (R. at 208).  She denied any previous psychiatric treatment or use of psychiatric medications (R. at 209-10) and any suicidal or homicidal ideation (R. at 211).  Ms. Casillas noted that the plaintiff exhibited a depressed mood and symptoms of depression attributed to her boyfriend's drug abuse

3

and the conflict it had caused in the home. (R. at 210-11).

Ms. Lopez-Delgado saw Ms. Casillas again on August 18 and 31, 2010, regarding similar complaints of depression. (R. at 206-07). The plaintiff admitted a desire to work or receive training but expressed frustration with herself due to her continued depression and feelings that she could not rouse herself to do anything. (R. at 206). Ms. Casillas referred her to Dr. Anthony Stern, a psychiatrist at Montefiore. (R. at 207).

Ms. Lopez-Delgado first met with Dr. Stern on September 7, 2010, and explained that she had been "very depressed for the last two years." (R. at 204). The plaintiff recounted that one year prior, she was admitted for a day to Lincoln Hospital for a "nervous breakdown" resulting from relationship problems and the birth of her child. (R. at 204). She reported that she had experienced depression intermittently for "many years," but that it had recently gotten worse. (R. at 204). She also reported trouble sleeping and "some degree" of agoraphobia ("being afraid to get out") over the past two years. (R. at 204). The plaintiff presented an intermittently tearful affect and depressed mood, though she remained coherent and continued to report no delusions or hallucinations and no suicidal or homicidal ideation. (R. at 205). Dr. Stern diagnosed her with "major depressive [disorder], recurrent, moderate" and prescribed trials of Wellbutrin for

depression and Trazodone for insomnia.  (R. at 205).  In addition, he advised that the plaintiff continue talk therapy with Ms. Casillas.  (R. at 205).

On September 15 and October 8, 2010, Ms. Lopez-Delgado again saw Ms. Casillas, who noted that the plaintiff was depressed.  (R. at 202-03).  The plaintiff reported continued feelings of depression, loneliness, and longing for the father of her child and admitted that it was "difficult for her to cope on her own."  (R. at 202).  At an appointment on October 19, 2010, Dr. Stern noted that Ms. Lopez-Delgado "tolerated Wellbutrin poorly" and that she "had obtained no relief from depression or anxiety" and in fact felt "more anxious."  (R. at 201).  She continued to present a "depressed affect and mood."  (R. at 201).  In response, Dr. Stern discontinued the Wellbutrin and assigned a trial of Remeron.  (R. at 201).

The following month, Ms. Lopez-Delgado met twice with Ms. Casillas, who noted the plaintiff's depression and anxiety.  (R. at 199-200).  The plaintiff expressed that she "[knew] she [was] not ready to work," but was anxious that "her benefits [would] be taken away from her if she [did] not go through this process."  (R. at 199).  Ms. Casillas advised that she continue to set goals and attempt to read every day to improve her reading skills.  (R. at 200).

At an appointment on December 21, 2010, Dr. Stern noted that the plaintiff presented a "less depressed affect and mood." (R. at 198). In an additional note from the same appointment, however, he described her affect and mood as "somewhat depressed." (R. at 197). The plaintiff reported that "the Remeron has helped a little," but she was "still depressed" and "[did not] want to be around people." (R. at 198, 197). She was "still [having] trouble sleeping." (R. at 198). In response, Dr. Stern increased the Remeron dose, prescribed a trial of Doxepin to help with the insomnia, and "strongly encouraged [her] to counter [her] wish to withdraw most of the time." (R. at 197). Dr. Stern diagnosed Ms. Lopez-Delgado with "persisting chronic depression with insomnia." (R. at 197).

C.  <u>Medical History After Disability Application</u>

On February 4, 2011, Ms. Lopez-Delgado was evaluated by a consulting psychologist, Dr. Edward Hoffman. Dr. Hoffman noted her history of depression and treatment through therapy and medication. (R. at 212). In considering her current functioning, he noted that "her sleeping is poor . . . [and] [s]he feels depressed. She has no hobbies or interests." (R. at 212). Her mood was "anxious, but stable." (R. at 213). Dr. Hoffman found that "[o]verall, she shows impaired adaptive functioning and socialization skills." (R. at 214). He concluded that Ms. Lopez-Delgado's "allegations of

psychiatric problems are supported by the examination today, and her history of psychiatric hospitalization and current outpatient mental health treatment." (R. at 214). He also noted her "history of academic failure and special education." (R. at 214).

based on her history Dr. Hoffman diagnosed Ms. Lopez-Delgado as having learning problems with depressive features on Axis I, mild mental retardation on Axis II, and asthma and frequent dizziness on Axis III. (R. at 214). He recommended that she continue treatment "for depression" and that she be referred to a sheltered workshop program. (R. at 214).

The plaintiff saw Dr. Stern on February 17, 2011. Again, he noted that her mood and affect were "somewhat depressed." (R. at 253). Ms. Lopez-Delgado reported that she was "sleeping better with the medicine" and "still depressed but managing better." (R. at 253). Dr. Stern determined that the Doxepin was helping with the insomnia and the depressive symptoms had lessened but still persisted. He advised that the plaintiff continue her current medications and see him again in two months. (R. at 253). Ms. Lopez-Delgado then saw Ms. Casillas on March 14, 2011 and complained of increased symptoms of depression including low self-worth and lack of independence. (R. at 252). Ms. Casillas assessed her as depressed and advised her to continue supportive counseling. (R. at 252).

Shortly thereafter, on March 15, 2011, Dr. Stern completed a treating physician's wellness plan report ("Wellness Plan") in connection with Ms. Lopez-Delgado's application for continued public assistance. Dr. Stern listed her current diagnoses as major depression and insomnia. He noted that her conditions had not been relieved or stabilized and declared that she was unable to work for at least 12 months and might be eligible for long term disability benefits. (R. at 241-42).

During her next visit to Ms. Casillas on April 13, 2011, Ms. Lopez-Delgado continued to complain of fatigue, hopelessness, isolation, and lack of motivation. (R. at 251). Ms. Casillas advised her to try volunteer work to improve her sense of self-worth and to bring her children out during the weekend to alleviate her sense of isolation. She diagnosed the plaintiff with "major depression" and advised that she continue counseling. (R. at 251).

On April 26, 2011, Dr. Stern completed a psychiatric assessment report in connection with Ms. Lopez-Delgado's disability application ("Psychiatric Assessment"). He diagnosed her with "major depressive disorder recurrent" and listed her symptoms as "insomnia, lacks motivation, hopelessness, fearful, lacks appetite, unable to concentrate[,] panic attacks." (R. at 244). He diagnosed her on Axis I with "major depression with insomnia and anxiety" and listed her symptoms on Axis IV as "[limited] social

8

supports, divorce and problems w/ past relationships[,] no [high school] diploma, unemployed on public assistance[,] inadequacy of finance." (R. at 245). Finally on Axis V, he assessed her with a GAF of 51.[4] (R. at 245). He described her as unable to control her emotions and unable to interact with the public "[at] this time." (R. at 246). He advised that her impairments had continued and could be expected to continue and that she would need to continue treatment through both therapy and medication. (R. at 245).

The next time Dr. Stern saw the plaintiff, on May 3, 2011, he noted a "somewhat less depressed" affect and mood. (R. at 250). The plaintiff reported that she was "sleeping much better" and she was "still depressed, but less." (R. at 250). Dr. Stern diagnosed her with "[Depressive Disorder not elsewhere classified] (ICD-311)" and noted his impressions that her insomnia had improved and her sadness and anxiety had "abated a little." (R. at 250). Still, Ms. Lopez-Delgado "[stated] she has always been depressed. Her recent break-up and her sister's severe illness continue to weigh

---

[4] A Global Assessment of Functioning ("GAF") of 51-60 represents "[m]oderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed., Text Revision, American Psychiatric Association 2000) ("DSM-IV-TR").

on her." (R. at 250). Dr. Stern advised that she continue her medication and her therapy with Ms. Casillas. (R. at 250).

Ms. Casillas did not see Ms. Lopez-Delgado again until October 10, 2011. Ms. Lopez-Delgado repeated her feelings of depression, isolation, and low self-worth. (R. at 249). She expressed feelings of anxiety and hopelessness when thinking about her future and the possible deaths of her family members. (R. at 249). She reported that she stayed at home unless she had a welfare appointment. (R. at 249). Ms. Casillas diagnosed her with "Major Depressive Disorder with anxiety and insomnia" and advised that she continue attending therapy, take her medication as prescribed, and try to go outside at least once a day. (R. at 249).

On February 25, 2011, Dr. M. Apacible, a State agency psychiatric consultant, reviewed the medical records in connection with Ms. Lopez-Delgado's disability application. She rated the plaintiff's functional limitations as constituting a "mild" restriction of daily activities and "moderate" difficulty in social function and maintaining concentration, persistence, or pace. (R. at 226). She found insufficient evidence to rate the frequency of episodes of deterioration. (R. at 226). Dr. Apacible noted the plaintiff's treatment history with particular attention to the opinion of Dr. Hoffman and opined that Ms. Lopez-Delgado retained the functional capacity to perform the basic mental demands of

simple work activity.  (R. at 231).

On March 15, 2011, Dr. Robert Campion, another State agency psychiatric consultant, supported Dr. Apacible's opinion with his own review of the medical records.  (R. at 236-39).  Dr. Campion found that "[w]hile limited intellectually, the claimant nonetheless still retains adequate understanding, memory, and concentrated pace or persistence to perform simple work.  She is also capable of interacting with others and adjusting to a simple work environment."  (R. at 237).

D.   <u>Vocational Expert Testimony</u>

David Sypher testified as a vocational expert at the hearing held in connection with the plaintiff's application.  (R. at 58-62).  He concluded that a hypothetical individual of Ms. Lopez-Delgado's age, education, work experience, and residual functional capacity limited to simple, routine, or repetitive tasks in a low stress job (only occasional decision making, changes in work setting, or interactions with the public) could perform medium work as a hand packager or kitchen helper or light work as a housekeeper.  (R. at 59-60).  His determination did not change when he was given a second hypothetical requiring no interaction with the public.  (R. at 60).

E.    Medical Evidence Submitted to Appeals Council

Ms. Norma Tejada, an entitlement specialist, completed a Third-Party Function Report in connection with the plaintiff's appeal following the denial of her application. (R. at 160-67). On May 30, 2013, Ms. Tejada met with Ms. Lopez-Delgado and noted that she suffered from "Major Depressive Disorder and Generalized Anxiety Disorder." (R. at 160, 165).  In describing her daily activities, the plaintiff reported she was "unable to sleep at night even with the help of medication," (R. at 160) and stayed "mostly at home and only [went] outside for mandatory and medical appointments" (R. at 160).  She also reported "lack of motivation and energy, crying spells, poor concentration, racing thoughts, trouble remembering," and a tendency to isolate herself due to anxiety. (R. at 165).

F.    Procedural History

On January 4, 2011, Ms. Lopez-Delgado filed an application for supplemental security income ("SSI"). (R. at 111-16).  The application was denied on February 28, 2011, and the plaintiff then requested a hearing before an administrative law judge ("ALJ"). (R. at 65, 71).  The plaintiff and her attorney appeared at a hearing before ALJ Patrick Kilgarron on October 28, 2011. (R. at 29-63).  Following the hearing, the ALJ issued a decision finding that the plaintiff was not disabled. (R. at 9-25).  The plaintiff

requested review (R. at 7-8), and on July 3, 2013, the Appeals Council declined to overturn the ALJ's decision, thereby making it the Commissioner's final determination (R. at 1-8).

Analytical Framework

    A.   Determination of Disability

    A claimant is disabled under the Act and therefore entitled to benefits if she can demonstrate through medical evidence that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Hahn v. Astrue, No. 08 Civ. 4261, 2009 WL 1490775, at *6 (S.D.N.Y. May 27, 2009); Marrero v. Apfel, 87 F. Supp. 2d 340, 345-46 (S.D.N.Y. 2000). The disability must be of "such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

    The SSA has created a five-step procedure for evaluating claims for Supplemental Social Security Income and Disability Insurance Benefits ("DIB"). 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must demonstrate that she is not currently

engaged in a substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). Next, the claimant must prove that she has a severe impairment that "significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Then, if the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 or is the substantial equivalent of a listed impairment, the claimant is automatically considered disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). However, if the claimant's impairment is neither listed nor equals any listed impairment, she must prove that she does not have the residual capacity to perform her past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). Finally, if the claimant satisfies her burden of proof on the first four steps, the burden shifts to the Commissioner to demonstrate that there is alternative substantial gainful employment in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v), (g); Longbardi v. Astrue, No. 07 Civ. 5952, 2009 WL 50140, at *23 (S.D.N.Y. Jan. 7, 2009) (citing Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999), and Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986)). In order to determine whether the claimant can perform other substantial, gainful employment, the Commissioner must consider objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and the claimant's educational

14

background, age, and work experience.  Hahn, 2009 WL 1490775, at *7
(citing Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per
curiam)).

    B.   Judicial Review

    The Act provides that the Commissioner's findings "as to any
fact, if supported by substantial evidence, shall be conclusive."
42 U.S.C. § 405(g).  A court reviewing the Commissioner's decision
"may set aside a decision of the Commissioner if it is based on
legal error or if it is not supported by substantial evidence."
Hahn, 2009 WL 1490775, at *6 (internal quotation marks omitted);
see Longbardi, 2009 WL 50140, at *21; Bonet v. Astrue, No. 05 Civ.
2970, 2008 WL 4058705, at *2 (S.D.N.Y. Aug. 22, 2008).  Judicial
review, therefore, involves two levels of inquiry.  First, the
court must decide whether the Commissioner applied the correct
legal standard.  Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999);
Calvello v. Barnhart, No. 05 Civ. 4254, 2008 WL 4452359, at *8
(S.D.N.Y. April 29, 2008).  Second, the court must decide whether
the ALJ's decision was supported by substantial evidence.  "In
determining whether substantial evidence exists, a reviewing court
must consider the whole record, examining the evidence from both
sides, because an analysis of the substantiality of the evidence
must also include that which detracts from its weight."  Longbardi,
2009 WL 50140, at *21 (citing Brown, 174 F.3d at 62, and Williams

15

v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)).  Substantial evidence in this context is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hahn, 2009 WL 1490775, at *6 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (quoting Richardson, 402 U.S. at 401).  "If substantial evidence supports the Commissioner's decision, then it must be upheld, even if substantial evidence also supports the contrary result."  Ventura v. Barnhart, No. 04 Civ. 9018, 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

    C.    The ALJ's Decision

    ALJ Kilgannon determined at step one of the disability inquiry that Ms. Lopez-Delgado had not engaged in substantial gainful activity since January 4, 2011, the application date.  (R. at 14).  At step two, he found that the plaintiff's "major depressive disorder, moderate, with features of anxiety and insomnia" was a "severe" impairment.  (R. at 14).  At step three, the ALJ concluded that her impairment did not meet or medically equal the severity of any listed impairment.  (R. at  15).  At the fourth step, he determined that the plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but was

limited to simple, routine, and repetitive tasks in a low-stress job, defined as having only occasional decision-making, only occasional changes in the work setting, and only occasional interaction with the public. (R. at 17). In determining this residual functional capacity, the ALJ assigned "significant weight" to the opinions of Dr. Apacible and Dr. Campion, while assigning only "slight weight" to Dr. Stern's Psychiatric Assessment. (R. at 23). He similarly assigned little weight to the opinion of Ms. Casillas and only "minimal weight" to the opinion of Dr. Hoffman. (R. at 22-23). Because the ALJ found that Ms. Lopez-Delgado was unable to engage in any past relevant work, he proceeded to step five. (R. at 23-24). After considering the plaintiff's specific vocational profile -- including her residual functional capacity, her age as of the application date (36), her limited education, and her work experience -- ALJ Kilgannon held that the plaintiff was not disabled. (R. at 25).

Discussion

    A.  <u>Treating Physician Rule</u>

The plaintiff contends that the ALJ erred in assigning only slight weight to Dr. Stern's April 26, 2011 Psychiatric Assessment. The SSA regulations establish that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by

medically acceptable clinical and laboratory diagnostic techniques
and is not inconsistent with the other substantial evidence in
[the] case record.'" <u>Burgess v. Astrue</u>, 537 F.3d 117, 128 (2d Cir.
2008) (alteration in original) (quoting 20 C.F.R. §
404.1527(d)(2)); <u>accord</u> <u>Green-Younger v. Barnhart</u>, 335 F.3d 99, 106
(2d Cir. 2003); <u>Correale-Englehart v. Astrue</u>, 687 F. Supp. 2d 396,
426 (S.D.N.Y. 2010). "This preference is generally justified
because treating sources are likely to be 'the medical
professionals most able to provide a detailed, longitudinal
picture' of a plaintiff's medical impairments and offer a unique
perspective that the medical tests and SSA consultants are unable
to obtain or communicate." <u>Correale-Engelhart</u>, 687 F. Supp. 2d at
426 (quoting 20 C.F.R. § 416.927(d)(2)). However, determination of
"dispositive" issues, such as whether the plaintiff "meet[s] the
statutory definition of disability" and cannot work, are reserved
for the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1);
<u>see</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 133 (2d Cir. 1999).

If the ALJ determines that a treating physician's opinion is
not controlling, he is nevertheless required to consider the
following factors in determining the weight to be given to that
opinion: (1) the length of the treatment relationship and the
frequency of examination; (2) the nature and extent of the
relationship; (3) the evidence provided to support the treating

physician's opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) other factors brought to the Commissioner's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); see Halloran, 362 F.3d at 32. The ALJ is not required to give the treating physician controlling weight, but he is required to give "good reasons" for the assignment of weight that he chooses. 20 C.F.R. § 404.1527(c)(2). "Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation . . . to explain why a treating physician's opinions are not being credited." Snell, 177 F.3d at 134.

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even -- and perhaps especially -- when those dispositions are unfavorable. A claimant like [Ms. Lopez-Delgado], who knows that her physician has deemed her disabled, might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. [Ms. Lopez-Delgado] is not entitled to have [her physician]'s opinion on the ultimate question of disability be treated as controlling, but she is entitled to be told why the Commissioner has decided -- as under appropriate circumstances is his right -- to disagree with [the treating physician].

Id. (internal citation omitted)(remanding case to Appeals Council for statement of reasons why treating physician's finding of disability was rejected).

Here, ALJ Kilgannon justified assigning only slight weight to Dr. Stern's Psychiatric Assessment because it was not consistent with (1) "his own findings from shortly before and after," (2) the notes from the plaintiff's "visit to Ms. Casillas on April 13, 2011," and (3) "his diagnosis of 'moderate' depression and his GAF rating of 51." (R. at 23). However, when compared with the record, which largely comprises treatment reports from Dr. Stern and Ms. Casillas, the ALJ's reasons for finding inconsistency are not supported by substantial evidence. Accordingly, he failed to apply the correct legal standard in assigning the opinion of the plaintiff's treating physician only slight weight.

### 1.   Dr. Stern's Objective Findings

Dr. Stern's Psychiatric Assessment is consistent with the preponderance of his own treatment notes before and after April 26, 2011. The only report from "shortly before" that date was the April 15, 2011 Wellness Plan. The Wellness Plan lists the same diagnosis of major depressive disorder and insomnia and indicates that it has not resolved or stabilized. (R. at 241-42). It further indicates that Ms. Lopez-Delgado was not able to work for at least the next twelve months and might be deserving of permanent disability benefits. (R. at 242). These findings are clearly consistent with the Psychiatric Assessment's determination of the plaintiff's functioning capabilities and diagnosis of recurrent

major depressive disorder.  (R. at 244).

In his search for inconsistency, the ALJ relies heavily on the slight improvement in the plaintiff's condition noted in Dr. Stern's treatment report from May 3, 2011.  Though the ALJ opines that this single treatment note indicates "significant improvement" in the plaintiff's condition (R. at 23), "[i]t is well settled that 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'"  Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quoting McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2d Cir. 1983)).  Dr. Stern's findings of improvement are in fact very limited.  The only area of "significant" improvement indicated is Ms. Lopez-Delgado's ability to sleep with her medications.  (R. at 250).  Beyond that, the May 3, 2011 treatment note indicates that she is "still depressed, but less," displays a "somewhat less depressed affect and mood," and that her sadness and anxiety "have abated a little."  (R. at 250). These notes may portray slight improvement, but the nearly contemporaneous Wellness Plan and Psychiatric Assessment both indicate that Dr. Stern still believed that the plaintiff required further treatment and was therefore unable to work.  (R. at 241-42, 250).  It is not for the ALJ to determine that the plaintiff has experienced "significant improvement" where her treating physician does not believe that she has.  Accordingly, this one instance of

21

slight improvement does not provide substantial evidence to support the conclusion that the Psychiatric Assessment's diagnosis is inconsistent with the record of recurring depressive symptoms.

   2.   <u>Ms. Casillas' April 13, 2011 Treatment Notes</u>

The ALJ determined, without further explanation, that "the visit to Ms. Casillas on April 13, 2011 . . . belie[s] the extreme limitations of 'poor' and 'none' in virtually every functional area that Dr. Stern rated on April 26, 2011." (R. at 23). The notes from that visit, however, provide no basis for this conclusion. In fact, the plaintiff indicated to Ms. Casillas that she was applying for Social Security income benefits because "she [did] not believe that she could do anything in the depressive state that she [was] in." (R. at 251). The ALJ fixated on Ms. Casillas' advice that the plaintiff try volunteer work "to help her become sure of her self," but failed to note her immediate response that "she felt that she was not intelligent and that she can not do anything but babysit." (R. at 251). In the sentence immediately following, Ms. Casillas recorded Ms. Lopez-Delgado "feeling tired much of the time and lacking motivation" and "[admitting] to isolating [herself] in her apartment." (R. at 251). The resultant diagnosis of major depression and suggestion of continued supportive counseling indicate that Ms. Casillas did not see improvement. (R. at 251). The Psychiatric Assessment shares many of the same findings and the

22

same diagnosis.  (R. at 244-45).  Accordingly, these treatment notes do not provide substantial evidence to support the ALJ's finding of inconsistency.

3.   "Moderate" Depression Diagnosis and GAF of 51

Ultimately, the ALJ opined that the Psychiatric Assessment was inconsistent with the substantial evidence on the record because it did not match Dr. Stern's "diagnosis of 'moderate' depression." (R. at 23).  In almost all instances other than his initial diagnosis (R. at 205), however, Dr. Stern does not diagnose Ms. Lopez-Delgado as "moderately" depressed (R. at 197, 201, 241-42, 244, 250, 253).  Holding the treating physician to his initial assessment, as the ALJ does here, defeats the purpose of crediting the person with the best opportunity to provide a detailed, longitudinal history of the applicant's progress.  In fact, Dr. Stern's most recent report prior to the Psychiatric Assessment, the Wellness Plan, presented the same diagnosis of major depression and insomnia.  (R. at 241).  Notably, neither describe Ms. Lopez-Delgado's condition as "moderate."  (R. at 241, 244).

It appears, however, that the ALJ got the impression of a "moderate" diagnosis from Dr. Stern's designation of the plaintiff's GAF at 51.  (R. at 245).  That GAF, however, was taken from the Psychiatric Assessment, in which Dr. Stern's additional notes and explanations clearly articulate his opinion regarding the

plaintiff's inability to function in a work environment. (R. at 244-45). In addition, a GAF of 51 falls at the lowest possible point in the DSM-IV-TR's range of 51-60 for moderate symptoms. One point lower, and the plaintiff's GAF alone would indicate serious impairment in social and occupational functioning.[5] Pairing and equating this barely moderate GAF determination with the singular initial diagnosis of moderate depression presents an inaccurate and construction of the medical record. The ALJ essentially created his own diagnosis from bits and pieces of Dr. Stern's and Ms. Casillas' testimony and used it to justify his discrediting of the Psychiatric Assessment. His diagnosis, however, was not only beyond his authority as a layperson, it was not supported by the substantial evidence on the record.

4.   Dr. Apacibles' and Dr. Campion's Opinions

The ALJ attempts to justify his view of the medical record by crediting the opinions of Dr. Apacible and Dr. Campion, neither of whom met with or treated the plaintiff. (R. at 23). The only reason the ALJ provides for assigning so much weight to the State agency consultants is their qualification as experts in disability program rules and medical record review pursuant to 20 C.F.R.

---

[5] A GAF of 41-50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work)." DSM-IV-TR at 34.

416.927(f) and SSR 96-6p, 1996 WL 374180 (S.S.A. 1996). (R. at 23). Such non-examining sources, however, are usually to be given less weight than an examining source like Dr. Stern or Ms. Casillas. 20 C.F.R. § 404.1527(c)(1). Accordingly, Dr. Apacible's and Dr. Campion's opinions are not sufficient to support the ALJ's conclusion where they are not supported by the substantial evidence on a record largely comprised of reports from examining sources.

B.   Remedy

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding the case for a rehearing. Remand for additional factual development is appropriate where "'there are gaps in the administrative record or the ALJ has applied an improper legal standard.'" Rosa, 168 F.3d at 82-83 (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)); see also Halloran, 362 F.3d at 33. In this case, I am not in the position to determine whether Ms. Lopez-Delgado is entitled to benefits or for what period. However, this case must be remanded to give the ALJ the opportunity to apply the treating physician rule properly. In the case that the ultimate determination remains the same, the ALJ must provide good reasons that are substantially supported by the record for not crediting Dr. Stern's Psychiatric Assessment.

Conclusion

For the foregoing reasons, the Commissioner's decision denying the plaintiff benefits is vacated and the case is remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:  New York, New York
        July 22, 2014

Copies mailed this day to:
Daniel Berger, Esq.
NY Disability, LLC
1000 Grand Concourse. Suite 1-A
Bronx, NY 10451

Leslie A. Ramirez-Fisher, Esq.
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, NY 10007